# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| COLD STONE CREAMERY, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 2012-CV-5462 |
| | ) |
| v. | ) |
| | ) |
| RAM SAROOP SINGH AND SARANJIT SINGH, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Cold Stone Creamery, Inc. ("CSC"), by its attorneys, as and for its Complaint against Defendants states as follows:

### Parties

1. CSC is an Arizona corporation with its principal place of business in Scottsdale, Arizona. CSC is a franchisor of independently owned and operated restaurants serving ice cream, yogurt, cakes, shakes and related products, with hundreds of locations nationwide, operating under the name "Cold Stone Creamery®."

2. Upon information and belief, Ram Saroop Singh is a citizen and resident of Illinois residing in Bolingbrook, Illinois.

3. Upon information and belief, Saranjit Singh is a citizen and resident of Illinois residing in Bolingbrook, Illinois.

**Jurisdiction And Venue**

4. The Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a), in that this is a civil action between citizens of different states and wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. Venue is proper in this Court under 28 U.S.C. § 1391(a), in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

6. Venue is proper in this Division because Defendants' reside in this Division and because their formerly franchised restaurant which is the subject of this action was located in Bolingbrook, Illinois in this Division.

**The CSC Marks and Franchise System**

7. To identify the source, origin and sponsorship of authorized COLD STONE CREAMERY® restaurants offering unique ice cream, yogurt and related products and services ("CSC Restaurants"), and to distinguish those products and services from those established, made, offered and sold by others, CSC, its predecessors and franchising affiliates, and authorized CSC franchisees, have extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to "COLD STONE CREAMERY," "COLD STONE," "CREATIONS COLD STONE ORIGINALS" and "APPLE PIE A LA COLD STONE" (collectively, the "CSC Marks").

8. The CSC Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the CSC Marks continue in full force and effect.

9. CSC is the owner and licensor of the CSC Marks for use in connection with the CSC franchise program. Pursuant to franchise agreements entered into by and between CSC and its authorized and approved franchisees, CSC has granted franchises to qualified persons to own and operate CSC Restaurants, together with a limited license to use the CSC Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by CSC in the franchise agreement.

### The Parties' Franchise Agreement and Sublease Agreement

10. On or about February 28, 2007, CSC, as franchisor, and Ram Saroop Singh and Saranjit Singh, as franchisees, entered into a written franchise agreement for Restaurant Number 22075 (the "Franchise Agreement") pursuant to which Defendants were granted a franchise to operate a Cold Stone Creamery Restaurant in Bolingbrook, Illinois for an initial ten (10) year term.

11. Pursuant to the Franchise Agreement, the Singhs agreed to unconditionally guarantee and to pay to CSC and to perform all the obligations and liabilities of the Franchisee in connection with the Franchise Agreement, the sublease to be executed in connection therewith and any other agreement with CSC.

12. Pursuant to the Franchise Agreement, the Singhs also agreed to enter into a sublease with CSC for the premises of their CSC Restaurant. On or about November 19, 2007, the Singhs, entered into a Sublease Agreement with CSC for their CSC Restaurant.

13. In exchange for the right to own and operate a CSC Restaurant, Defendants agreed, inter alia, to operate their franchise in accordance with the standards set forth in the Franchise Agreement and the CSC Operating Manual and to pay CSC certain monthly royalty fees and advertising fees.

14. Defendants also expressly acknowledged that CSC's trade secrets and other confidential and proprietary information, processes, materials and rights relating to the development, promotion and operation of their CSC Restaurant were to be kept in the strictest confidence and not disclosed to anyone for any purpose.

15. Defendants agreed that, upon termination of the Franchise Agreement for any reason, defendants would, *inter alia*, cease to hold themselves out as franchisees of CSC and cease to use the CSC Marks in any form. Defendants also agreed that upon termination of the Franchise Agreement, they would immediately assign the business telephone numbers for their former franchised CSC Restaurant to CSC. Defendants also committed to, upon termination of the Franchise Agreement, immediately pay all sums or amounts due and owing to CSC, as well as to return to CSC all operating manuals and other confidential and proprietary information and instructions and recipes provided to them in connection with the operation of their former CSC Restaurant and all materials containing the CSC Marks.

16. Pursuant to the Franchise Agreement, Defendants agreed to protect, defend and indemnify CSC from and against any and all claims of every kind incurred by CSC arising out of Defendants' actions or omissions or the conduct of their franchised business. Any such amounts that remain unpaid are subject to an interest rate of eighteen percent (18%). This clause expressly survives the expiration or termination of the Franchise Agreement.

17. Pursuant to the Sublease, Defendants also agreed to reimburse CSC for any and against any and all claims of every kind incurred by CSC arising out of, among other things, the terms and conditions, requirements and provisions of the Lease and Sublease. This clause expressly survives the expiration or termination of the Sublease.

18. Defendants also agreed to pay costs, including attorneys' fees incurred by CSC in connection with the enforcement of CSC's rights under the Franchise Agreement.

19. Defendants also agreed to pay costs, including attorneys' fees incurred by CSC in connection with enforcing its rights under the Sublease.

20. CSC has fully performed all of its obligations under the Franchise Agreement, the Lease and the Sublease.

### Termination Of The Franchise Agreement and Sublease

21. On or about June 3, 2010, CSC terminated the Defendants' Franchise Agreement and Sublease for Restaurant 22075 for, among other things, failing to make required payments under those agreements.

22. Upon termination, Defendants were required to comply with their post-termination obligations under the Franchise Agreement and the Sublease, including those enumerated in the above paragraphs.

### Defendants' Breaches Of The Franchise Agreement and Sublease

23. Despite termination of the Franchise Agreement, Defendants have failed and refused to pay all amounts past due and owing. CSC is entitled to payment for this amount plus costs and fees associated with collection and interest at eighteen percent (18%) per annum.

24. Despite termination of the Franchise Agreement, Defendants have violated their post-termination obligations contained in their written Franchise Agreement and Sublease with CSC by refusing to (i) return to CSC its proprietary equipment and all operating manuals and other confidential and proprietary information and instructions and recipes provided to them; (ii) return all materials bearing the CSC logos and Marks; and, (iii) assign the telephone numbers for their former CSC Store to CSC.

25. Defendants' actions also caused CSC to enter into an early termination agreement for the lease with the Landlord for the premises of Defendants' formerly franchised CSC restaurant. CSC is entitled to reimbursement for this amount plus costs and fees associated with collection and interest at eighteen percent (18%) per annum.

26. Despite the termination of the Franchise Agreement and the Sublease and CSC's demands that Defendants comply with their post-termination obligations, Defendants have refused to do so.

27. As a direct and proximate result of Defendants' actions, Plaintiff has been and is likely to be substantially injured in its business, resulting in lost revenues and profits, and diminished goodwill, in an amount to be proven at trial but not less than $75,000.00.

28. Plaintiff has no adequate remedy at law because the CSC trade secrets and confidential and proprietary information are unique and proprietary to CSC, such that damages alone cannot fully compensate CSC for defendants' misconduct. Unless ordered to specifically perform their post-termination obligations, Defendants will continue to exploit and use CSC's confidential information – all to CSC's irreparable injury. This threat of future injury to CSC's business identity, goodwill and reputation requires specific performance to prevent Defendants' continued use of CSC's confidential information and to ameliorate and mitigate CSC's injuries.

### Count I—Breach Of Franchise Agreement—Damages

29. CSC repeats and realleges ¶¶ 1 through 28 of its Complaint as and for this ¶29, as if fully set forth herein.

30. Under the Franchise Agreement, Defendants agreed to operate their franchised Cold Stone Creamery business in strict compliance with the Franchise Agreement and CSC's standard and specifications for an initial ten year term, and, in connection therewith, to pay to

CSC (i) a weekly royalty fee in an amount equal to six percent (6%) of gross sales, and (ii) a weekly advertising contribution in an amount equal to three percent (3%) of gross sales.

31. Defendants materially breached the Franchise Agreement by failing to operate their franchised Cold Stone Creamery Restaurant in compliance with the Franchise Agreement and CSC's standards and specifications by, among other things, failing to pay all royalties and advertising fees.

32. As a direct and proximate result of Defendants' breach, CSC has been damaged in an amount equal to the fees past due and owing and the lost royalty fees and advertising contributions it would have earned for the remainder of the Franchise Agreement's term but for Defendants' breach plus costs, including attorneys' fees and interest.

33. CSC at all times fully performed all of its obligations under the Franchise Agreement.

**Count II—Breach Of Franchise Agreement—Injunctive Relief/Specific Performance**

34. CSC repeats and realleges ¶¶ 1 through 33 of its Complaint as and for this ¶34, as if fully set forth herein.

35. Defendants have violated their post-termination obligations in their written Franchise Agreement with CSC. Specifically, Defendants have failed to (i) return to CSC its proprietary equipment and all operating manuals and other proprietary and confidential information and instructions and recipes provided to them; (ii) assign the telephone numbers for their former CSC Restaurant to CSC's designee; and, (iii) return all other materials bearing the CSC logos and Marks.

36. Defendants' failure to comply with their post-termination obligations constitutes a material breach of the Franchise Agreement. As a direct and proximate result of Defendants'

breach, the threat of continuing and future injury to CSC requires that Defendants be ordered to specifically perform their post-termination obligations under the Franchise Agreement to prevent Defendants' continued breach and to ameliorate and mitigate CSC's injury.

37. CSC has fully performed all of its obligations under the Franchise Agreement.

### Count III—Breach Of Franchise Agreement—Indemnification

38. CSC repeats and realleges ¶¶ 1 through 37 of its Complaint as and for this ¶38, as if fully set forth herein.

39. Defendants have violated their obligations in their written Franchise Agreement with CSC to reimburse, indemnify and hold CSC harmless for any amounts paid out by CSC as a result of Defendants actions. Specifically, Sections 7(u) and 12 of the Franchise Agreement obligate Defendants to indemnify and make whole CSC for any and all amounts paid out in relation to the termination of the Franchise Agreement and Sublease, including costs and attorneys' fees and interest at eighteen percent (18%) per annum.

40. Defendants' failure to comply with indemnification obligations under the Franchise Agreement constitutes a material breach of the Franchise Agreement.

41. As a direct and proximate result of Defendants' breach, CSC has been damaged in an amount to be proven at trial but not less than $75,000.00 plus costs, attorneys' fees and interest at a rate of 18% per annum.

42. CSC has fully performed all of its obligations under the Franchise Agreement.

### Count IV—Breach Of Sublease—Indemnification

43. CSC repeats and realleges ¶¶ 1 through 42 of its Complaint as and for this ¶43, as if fully set forth herein.

44. Defendants have violated their obligations in their written Sublease Agreement with CSC to reimburse CSC for any amounts paid out by CSC as a result of Defendants' actions. Specifically, Section 12 of the Sublease obligates Defendants to indemnify and make whole CSC for any and all amounts paid out in relation to the termination of the Franchise Agreement and Sublease, including costs and attorneys' fees.

45. Defendants' failure to comply with indemnification obligations under the Sublease Agreement constitutes a material breach of the Sublease Agreement.

46. As a direct and proximate result of Defendants' breach, CSC has been damaged in an amount to be proven at trial but not less than $75,000.00 plus costs, attorneys' fees and interest at a rate of 18% per annum. CSC has fully performed all of its obligations under the Sublease Agreement.

## Count V—Breach Of Personal Guarantee

47. CSC repeats and realleges ¶¶ 1 through 46 of its Complaint as and for this ¶47, as if fully set forth herein.

48. Defendants have violated their obligations in their written personal guarantees to guaranty and perform the obligations of the Franchise Agreement and Sublease. Defendants are personally obligated and required to pay and make whole CSC for any and all amounts owing, lost or paid out in relation to Franchise Agreement and Sublease, including costs and attorneys' fees and interest at eighteen percent (18%) per annum.

49. Defendants' failure to comply with their written personal guaranty obligations constitutes a material breach of those agreements. As a direct and proximate result of Defendants' breaches, CSC has been damaged in an amount to be proven at trial but not less than $75,000.00 plus costs, attorneys' fees and interest at a rate of 18% per annum.

**Prayer For Relief**

WHEREFORE, CSC respectfully prays for the following relief against Defendants:

A. A preliminary and permanent injunctive relief ordering Defendants to comply strictly with their post-termination obligations to:

1. Assign the telephone numbers for their former CSC Store to CSC;

2. Return to CSC its proprietary equipment and all operating manuals and other confidential and proprietary information and instructions and recipes provided to them; and,

3. Return all stationery and other materials bearing the CSC logos and Marks;

B. That Defendants be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

C. That Defendants pay to Plaintiff such damages as Plaintiff has sustained by reason of Defendants' actions, including without limitation, past due fees and other amounts and lost future profits plus interest at the contractual rate of 18% per annum;

D. An award of costs and expenses, including reasonable attorneys' fees incurred by Plaintiff in connection with this action as provided for by the Franchise Agreement, Sublease Agreement and statute; and

E. Such other and further relief as the Court deems just and proper.

Dated:  July 11, 2012					Respectfully submitted,

**COLD STONE CREAMERY, INC.**

 /s/ Alice A. Kelly
Alice A. Kelly (#6281897)
The Kelly Law Group, LLC
2 N. LaSalle St., Ste. 1300
Chicago, IL 60602
312.476.7619
312.962.4309 (fax)